**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| POSITIVE T. A. NELSON, GARY UDHWANI and BRENDA CHARLES<br><br>Plaintiffs,<br><br>v.<br><br>CAROLINE FAWKES IN HER OFFICIAL CAPACITY AS THE SUPERVISOR OF ELECTIONS FOR THE VIRGIN ISLANDS and THE VIRGIN ISLANDS TERRITORIAL BOARD OF ELECTIONS<br><br>Defendants. | 1:18-CV-<br><br>**ACTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND DECLARATORY RELIEF** |

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION

Senator Positive T.A. Nelson, Gary Udhwani, and Brenda Charles seek a temporary restraining order and preliminary injunction preventing Caroline F. Fawkes, the Virgin Islands Supervisor of Elections, from disqualifying Senator Positive T.A. Nelson, Gary Udhwani from running for governor and lieutenant governor of the Virgin Islands in the November 6, 2018 election and requiring Defendant Fawkes to place them on the official ballot for that election. Immediate action is required because Defendant Fawkes has issued a Notice of Disqualification to Senator Nelson, removing his team from the ballot for the November 6, 2018 election based upon her incorrect interpretation of, and unconstitutional application of, 18 V.I.C. § 346 (1), 18 V.I. C. § 116, 18 V.I.C.§ 411(c), and 18 V.I.C. §381.

1. **BACKGROUND**

This is a case where, the fundamental rights to access to the ballot, to associate with and to cast a vote for the candidate of your choice to express your political belief, has been

severely impacted by an improper and unlawful act of the Supervisor of Elections. Senator Nelson is a candidate for governor of the Virgin Islands and has chosen Mr. Udhwani to run as his running mate. Senator Nelson is a registered voter and in the official records of the Board of Elections is not aligned with any political party – he is running as an independent or "no party" candidate. Mr. Udhwani is similarly registered as an independent or "no party" candidate. Senator Nelson has chosen to associate with Udhwani for many different reason including their similar political beliefs and vision for the future of the Virgin Islands which they seek to advance in the political process.

Plaintiff Charles is a registered voter and citizen and resident of St. Croix. She is listed with the Elections System of the Virgin Islands as a Democrat. She signed a nomination petition pursuant to 18 V.I.C. § 381 seeking to have Senator Nelson and Mr. Udhwani placed on the general election ballot as candidates for governor and lieutenant governor, respectively. As a registered voter, she has a right to choose among candidates placed on the ballot without unconstitutional exclusions or restrictions. *Clingman v. Beaver*, 544 U.S. 581 (2005); *California Democratic Party v Jones,* 530 U.S. 567, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000); *Thorsted v. Gregoire*, 841, F.Supp. 1068, 1073 (W.D. Wash. 1994). [1]

Defendant Fawkes seeks to preclude Senator Nelson and Mr. Udhwani from associating with each other in the political arena and to prevent Charles from voting for them

---

[1] The factual statements in this motion are supported by the allegations in the complaint. The complaint is verified by all three plaintiffs.

*Nelson/Udhwani v. Caroline Fawkes, et. al.*
Emergency motion for temporary restraining order and preliminary injunction and memorandum of law in support of motion.

3

in the November 6, 2018 election. As Supervisor of Elections, she has issued a Notice of Disqualification under 18 V.I.C. § 411(b) (**Exhibit 2** to the complaint) and has disqualified Senator Nelson and Mr. Udhwani as candidates for governor and lieutenant governor, respectively. (**Exhibit 3** to Complaint). Her stated reasons for doing so is her interpretation of 18 V.I.C. § 346 (1), 18 V.I. C. § 116, 18 V.I.C.§ 411(c), and 18 V.I.C. §381. She asserts that Mr. Udhwani was not a qualified elector at the time he submitted his nomination papers on May 8, 2018, and his Affidavit of Circulator with signatures affixed prior to him being reinstated on May 8, 2008. Defendant Fawkes's position is incorrect and violates Senator Nelson, Mr. Udhwani, and Charles' First and Fourteenth Amendment rights.

Pursuant to 18 V.I.C.§ 411(a), the Supervisor of Elections or his deputy shall examine forthwith the nomination papers filed and shall permit them to be examined by any interested citizen. Pursuant to 18 V.I.C.§ 411(b), if the Supervisor determines that a candidate for election or nomination does not meet the qualifications established by law for the office, then she shall disqualify such candidate and delete the candidate's name from the ballot if the ballots have not been printed. Pursuant to 18 V.I.C.§ 411(c), when a nomination paper is found to be defective the candidate shall be notified immediately by special messenger with the reason or reasons therefor. If a new, valid petition, paper or certificate is not filed within three days thereafter the candidate shall be disqualified for nomination or election.

Pursuant to 18 V.I.C. § 412, all nomination petitions and nomination papers received and filed under this chapter, and accepted after the examination required by section 411 of

*Nelson/Udhwani v. Caroline Fawkes, et. al.*
Emergency motion for temporary restraining order and preliminary injunction and memorandum of law in support of motion.

4

this title, shall be deemed to be valid, unless, within five days after the last day for filing such nomination petition or papers, a petition is presented to the district court, specifically setting forth the objections thereto, and praying that such petition or paper be set aside.

Plaintiffs were not notified of any defect with their nomination papers in accordance with 18 V.I.C. § 411 (c) after the expedited examination of the papers required by 18 V.I.C. § 411 (a). Plaintiffs were not notified that they had three days to cure a defect in their nomination papers in accordance with 18 V.I.C. § 411 (c). Plaintiffs were not notified within five days after the last day for filing such nomination petition or papers that any objections had been lodged seeking the setting aside of their nomination papers and understood their petition to be valid by operation of law as set forth in 18 V.I.C. § 412 and by the lack of notification that the Supervisor had found any defect in their nomination papers.

The first time Plaintiffs became aware that their nomination papers had been deemed defective, was when Senator Nelson received this Notice of Disqualification from Defendant Fawkes. Despite communications to Defendant Fawkes to reconsider her decision or to provide the statutory time to cure any defect, she refused to reconsider her decision deeming the matter to be out of her hands. Because Defendant Fawkes represented the matter had been referred to the Territorial Board of Elections, Plaintiffs appealed her decision to the Board. The Board has not responded to Plaintiffs' appeal.

On June 5, 2018, Defendant Fawkes published the list of electors certified for the 2018 election and did not include the Plaintiffs' name on that list. The actions of Defendant

*Nelson/Udhwani v. Caroline Fawkes, et. al.*
Emergency motion for temporary restraining order and preliminary injunction and memorandum of law in support of motion.

5

Fawkes of disqualifying Senator Nelson and Udhwani from vying for the offices of governor and lieutenant governor violate the clear election laws of the Virgin Islands, the First, Fourteenth and Fifteenth Amendments to the United States Constitution, and disenfranchises their supporters.

Both reasons for the disqualification of Senator Nelson's gubernatorial candidacy violate the Plaintiff's access to the ballot and right to vote guaranteed by the United States Constitution, are contrary to the election laws of the Virgin Islands, and will cause irreparable harm should this Court not grant a temporary restraining order to prohibit Supervisor Fawkes from removing Senator Nelson's team from the 2018 elections ballot.

## 2.  <u>SUBJECT MATTER JURISDICTION</u>

This Court has original jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343, as Plaintiffs' claims arise under the Constitution and laws of the United States of America, and more specifically the First, Fourteenth, and Fifteenth Amendments of the United States Constitution, and the Revised Organic Act, 48 U.S.C §§1561, 1591.

## 3.  <u>RELEVANT SECTIONS OF THE REVISED ORGANIC ACT AND THE V.I. ELECTION CODE</u>

The Revised Organic Act, 48 U.S.C. §1591, specifies that in an election, the governor and lieutenant governor of the territory "shall be chosen jointly, by the casting by each voter of a single vote applicable to both officers." The form of official ballots for the territory is established in 18 V.I.C. § 492(a), which requires that the official ballot be "in substantially"

the form set forth in the statute (a sample form is printed in 18 V.I.C. § 492(a). For purposes of this motion, the decision of Defendant Fawkes to deem Mr. Udhwani an unqualified voter means that the candidacy of both candidates is impacted as they must be jointly chosen.

Pursuant to 18 V.I.C.§346(1), the statute relied upon by Defendant Fawkes, placed in Subchapter I of Chapter 17 ("Nomination of Candidates") of Title 18, and applicable only to primary elections, a nomination petition may be submitted on one or more sheet and each sheet shall have appended thereto the affidavit of a person, not necessarily a signer, and not necessarily the same person on each sheet, setting forth: (1) that the affiant is a qualified elector of the territory of the Virgin Islands, or of the election district, as the case may be, referred to in the petition. Plaintiffs were unaffiliated with any party and were not subject to the mandates of 18 V.I.C.§346(1), as it relates to candidates affiliated with identified parties.

Pursuant to 18 V.I.C. § 93, dealing with all potential electors, once an elector has properly registered, that elector shall not be required to register again for any election or primary, unless his registration is canceled for the failure to vote in two consecutive general elections as provided in 18 V.I. C. § 116. Pursuant to 18 V.I.C. § 110 et. seq., at least once in each four years, the board shall conduct a check-up of each registered elector in the election district by any method deemed necessary. The Board failed to notify Mr. Udhwani that, pursuant to its every four-year examination duty set forth in 18 V.I.C. § 110, it had examined the registers and found that he had not voted at the past two general elections and provided him notice to re-register in accordance with 18 V.I.C. § 116. Pursuant to title

*Nelson/Udhwani v. Caroline Fawkes, et. al.*
Emergency motion for temporary restraining order and preliminary injunction and memorandum of law in support of motion.

7

18 V.I. C. § 116, cross-referenced in title 18 V.I.C. § 93, before the Board of Elections makes a decision to cancel an elector's registration for failure to vote at two consecutive general elections, the Board must have notified that elector and given he or she thirty (30) days from the date of the notice to file either personally or by mail, a written request for reinstatement of his registration, setting forth his place of residence, and signed by him.

Only after this thirty-day notice period has elapsed, is the Board authorized to cancel the elector's registration, and that authority can b exercised only if, during that 30-day notice period, the elector failed to indicate an intent to re-register personally or by mail. The Board has never notified Udhwani as required by 18 V.I. C. §§ 110 and 116 that his registration was subject to be canceled for failure to vote at two consecutive general elections. The Board did not give Udhwani the required thirty-days' notice to request to be reinstated in accordance with 18 V.I. C. § 116.

Subchapter II of Chapter 17 of Title 18 specifies a procedure for nominating candidates that is "[i]n addition to the party nominations made at primaries." 18 V.I.C. §381(a). Under subchapter II, an elector of any party or no party may nominate an individual to run for office outside of the party primary process. See 18 V.I.C. § 381(c) (setting forth requirements for individuals signing a nomination paper and including no requirement relating to party affiliation or lack of such affiliation). Therefore, voters registered to any party, or no party, can sign the nomination petition. Likewise, there is no requirement in subchapter II that the candidate be an independent or "no party" candidate; and, unlike the subchapter

I affidavit, the affidavit of a candidate seeking to get on the ballot through subchapter II does not have any requirement that the candidate attest to membership in, or lack of membership in, any political party. 18 V.I.C. § 383. Senator Nelson and Mr. Udhwani filed their nomination papers under Subchapter II and timely submitted the requisite nominating petitions to be included on the ballot as candidates for governor and lieutenant governor. Defendant Fawkes nevertheless disqualified them without ever issuing them a Notice of Defect under 18 V.I.C. § 411, and without giving them an opportunity to cure the identified defect. informing them that she has determined that there is a defect in their nominating papers. Defendant Fawkes has also removed them from the published list of candidates for the November 2018 general elections, signaling her intent to continue to infringe upon and violate their constitutional rights to vote, associate, and access the ballot.

## 4. <u>REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION</u>

The Court has the authority to issue a temporary restraining order upon motion, pursuant to Federal Rule of Civil Procedure 65(b). A temporary restraining order is a stop-gap procedural device to preserve the status quo until a preliminary or permanent injunction can be considered. As stated by this Court in *Olmeda v. Schneider*, 889 F.Supp. 228 (D.V.I. 1995):

> The grant or denial of a preliminary injunction rests in the discretion of the trial court and may be reversed on appeal only if the decision below was an abuse of discretion. See, e.g., Brotherhood of Locomotive Engineers v. MO–KS–TX R. Co., 363 U.S. 528 (1960); A.L.K. Corporation v. Columbia Pictures Indus., Inc., 440 F.2d 761, 763 (3d Cir.1971). Requests for injunctive relief invoke the court's equitable discretion and resolving such motions requires a delicate balance of factors. There are four general requirements:

*Nelson/Udhwani v. Caroline Fawkes, et. al.*
Emergency motion for temporary restraining order and preliminary injunction and memorandum of law in
support of motion.

9

(1)  the moving party must produce evidence sufficient to convince the court that in
the absence of the relief he will suffer irreparable injury;

(2)  the moving party must show a likelihood of success on the merits;

(3)  that granting the relief will not result in greater harm to the other party; and

(4)  that granting the relief will be in the public interest.

*Olmeda*, 889 F.Supp. at 231 (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975);

*ECRI v. McGraw–Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987); *SI Handling Systems, Inc. v.*

*Heisley*, 753 F.2d 1244, 1254 (3d Cir.1985)).

> All of the above factors are balanced with regard to any final decision and the
> strength of any above factor may affect the necessary showing with regard to
> another. Marxe v. Jackson, 833 F.2d 1121, 1128 (3d Cir.1987).

*Olmeda*, 889 F.Supp. at 231.

Plaintiffs maintain that they satisfactorily demonstrate each of the above listed

conditions thereby entitling Plaintiffs to injunctive relief in the form of a TRO.  With the

above standard in mind, the Plaintiffs will now show why entry of the Rule 65 relief is

warranted based on these four criteria.

a.  **FACTOR 1: SUCCESS ON THE MERITS- BECAUSE THERE IS NO BASIS
FOR DEFENDANT FAWKES TO DISQUALIFY SENATOR NELSON AND
MR. UDHWANI, THEY HAVE SHOWN A SUBSTANTIAL LIKELIHOOD OF
SUCCESS ON THE MERITS.**

The statutes implicated in this case are explicit on their face and invariably require

that, once an elector has been deemed an eligible voter and has been registered as such,

that elector can only be removed from the registers if the Board of Elections provided that

elector due process through notice and an opportunity to be reinstated. Specifically,

according to the election law of the Virgin Islands codified at 18 V.I.C. § 93, once an elector

*Nelson/Udhwani v. Caroline Fawkes, et. al.*
Emergency motion for temporary restraining order and preliminary injunction and memorandum of law in support of motion.

10

has properly registered, that elector shall not be required to register again for any election or primary, unless his registration is canceled for the failure to vote in two consecutive general elections as provided in 18 V. I. C. § 116. The exact language of the law states:

> **No person shall be permitted to vote at any election or primary held in any election district unless he shall have been so registered, except by order of the district court as hereinafter provided; and no elector so registered shall be required to register again for any election or primary while he continues to reside at the same address, unless his registration is cancelled by reason of his failure to vote at two consecutive general elections as provided in section 116 of this title.**

18 V.I.C. § 93.

Notably, Mr. Gary Udhwani, Senator Nelson's choice for the Office of the Lieutenant Governor, was first registered to vote in the Virgin Islands in 1995, has been listed as a registered voter since that date, and has never been notified otherwise, as required by 18 V. I. C. § 116. Title 18 V. I. C. § 116, cross-referenced in title 18 V.I.C. § 93 cited above, sets forth the due process required to cancel an elector's registration. It provides in pertinent part that, before the Board of Elections makes a decision to cancel an elector's registration for failure to vote at two consecutive general elections, the Board must have notified that elector and given he or she thirty (30) days from the date of the notice to file "either personally or by mail, a written request for reinstatement of his registration, setting forth his place of residence, and signed by him." 18 V.I.C. § 116. Only after this thirty-day notice period has elapsed, is the Board authorized to lawfully cancel the elector's registration, and, only if during that notice period, the elector failed to indicate an intent to re-register personally or by mail. 18 V.I.C. § 116.

*Nelson/Udhwani v. Caroline Fawkes, et. al.*
Emergency motion for temporary restraining order and preliminary injunction and memorandum of law in support of motion.

11

In Mr. Udhwani's case, he has never been notified by the Board that his registration was subject to be canceled for failure to vote and that he had thirty days from the date of such notice to request to be reinstated in accordance with the statute. Because the Board failed to notify Mr. Udhwani of this apparent cancellation, and he was not given an opportunity to be reinstated, the cancellation was invalid, unauthorized, and unlawful. Accordingly, at the time the subject nomination papers were submitted, Mr. Udhwani was a registered/qualified elector, contrary to the position the Supervisor of elections. In sum, Senator Nelson and Mr. Udhwani are both qualified electors and can easily show success on the merits of that claim.

Supervisor Fawkes also disqualified the Nelson team because she determined, albeit incorrectly, that the signatures on the papers submitted by his Lieutenant Governor candidate, were dated prior to May 8, 2018, the date he was first informed of the cancellation of his registration, and the date he re-registered to be placed back into the system, the signatures are invalid. However, the signatures were not invalid on the date they were affixed, as according to the clear language of 18 V.I.C. § 110 et. seq. Because the Board of Elections failed to notify Mr. Udhwani that, pursuant to its every four-year examination duty set forth in 18 V.I.C. § 110, it had examined the registers and found that he had not voted at the past two general elections and provided him notice to re-register in accordance with 18 V.I.C. § 116, Mr. Udhwani was in fact, a qualified elector at the time the signatures were affixed.

As such, Supervisor Fawkes' decision to disqualify team Nelson was not only done in error, it was also done without offering Senator Nelson's team the required section 411(c) due process. As such, the Nelson team can similarly show success on the merits as to this reason for disqualification as Mr. Udhwani was a qualified elector, properly registered prior to the affixing of any signature on his submitted nomination papers. Moreover, to date, neither Ms. Fawkes nor the Board of Elections has shown that Mr. Udhwani: (a) was never registered to vote; (b) the Board did a section 110 check-up of the registers and found that he was registered to vote but later canceled out of the system after they gave him due notice and a chance to be reinstated; or (c) was informed at the time he submitted his nomination papers that the signatures affixed to his nomination papers would be deemed invalid due to his May 8 re-registration. The Plaintiffs therefore, have a meritorious claim that can be easily proven.

Further, as a constitutional matter, in ballot access cases such as this one, the Third Circuit follows the U. S. Supreme Court's analysis in *Anderson v. Celebrezze*, 460 U.S. 780 (1983). In *Anderson*, the Supreme Court has opined, that "[o]ur primary concern is with the tendency of ballot access restrictions 'to limit the field of candidates from which voters might choose.' Therefore, "[i]n approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters.'" *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). The Court opined that, "[t]he impact of candidate eligibility requirements on voters implicates basic constitutional rights. Writing

for a unanimous Court in *NAACP v. Alabama,* 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958), Justice Harlan stated that it 'is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech.'" *Id.* In reviewing the Ohio statute before the Court at that time, the Court opined that, "[i]n the present situation the state laws place burdens on two different, although overlapping, kinds of rights—the right of individuals to **associate for the** advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms." *Id*. Quoting an earlier decision, the Court noted that, "[a]s we have repeatedly recognized, voters can assert their preferences only through candidates or parties or both. 'It is to be expected that a voter hopes to find on the ballot a **candidate who** comes near to reflecting his policy preferences on contemporary issues.'" *Id*., quoting, *Lubin v. Panish,* 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974).

In *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997), the Third Circuit observed that "[i]n assessing these claims," Anderson "explained that each provision of a state's election code inevitably affects the right of association and the right to vote." *Id*. at 880. While the Third Circuit acknowledged that states have a right to regulate elections so that they are fair and honest and have some form of order, it recognized that a plaintiff's constitutional rights are nevertheless critical:

[I]n assessing the merits of a constitutional challenge to a specific provision of a

*Nelson/Udhwani v. Caroline Fawkes, et. al.*
Emergency motion for temporary restraining order and preliminary injunction and memorandum of law in support of motion.

14

state's election laws, a court must carefully weigh competing factors. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Id.* Moreover, "[i]f the burden on the plaintiff's rights is severe, the state's interest must be compelling and the law must be narrowly tailored to serve the state's interests." *Patriot Party of Allegheny County v. Allegheny County Department of Election*s, 95 F.3d 253, 258 (3d Cir. 1996).

The rights Senator Nelson and Mr. Udhwani seek to assert are fundamental First Amendment rights – the right of access to the ballot to run for public office enabling them to advance their ideas for improving the lives of Virgin Islanders and the right to do so by freely associating with each other to effectuate their goals and vision. The right that Ms. Charles seeks to exercise is also fundamental – the right to vote for the candidate of her choice and the right set forth in 18 V.I.C. §381 to select a standard bearer of her political ideas. *See Patriot Party v. Allegheny County*, 95 F.3d 253 (3d Cir. 1996). There can be no doubt that these rights are entitled great weight. By contrast, there is no legitimate government interest in eliminating a candidate from the ballot without giving them the due process guaranteed by the Fourteenth Amendment to the U.S. Constitution.

In *Clingman v. Beaver*, 544 U.S. 581 (2005), the U.S. Supreme Court made it clear that the First Amendment, among other things, protects the right of citizens "to band together

in promoting among the electorate candidates who espouse their political views." (quoting *California Democratic Party* v. *Jones,* 530 U. S. 567, 574 (2000)). The Court opined that, "[t]his Nation has a tradition of political associations in which citizens band together to promote candidates who espouse their political views. The First Amendment protects the freedom to join together to further common political beliefs, id., at 214-215, which presupposes the freedom to identify those who constitute the association, and to limit the association to those people. In no area is the political association's right to exclude more important than in its candidate-selection process." *California Democratic Party v Jones*, 530 U.S. 567, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000)(internal citations omitted); *see also*, *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992)(It is beyond cavil that "voting is of the most fundamental significance under our constitutional structure." *Illinois Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979)).

Because Defendant Fawkes' interpretation of the statutes referenced herein is incorrect, specifically, 18 V.I.C. § 346 (1), 18 V.I. C. § 116, 18 V.I.C.§ 411(c), and 18 V.I.C. §381, the Plaintiffs will likewise prevail. 18 V.I.C. § 346 (1) is inapplicable to the Plaintiffs insofar as they are independent candidates not participating in a primary election. 18 V.I. C. § 116 requires due process before a person's registration can be canceled. 18 V.I.C.§ 411(c) requires due process in the form of a Notice of Defect and a three-day notice to cure said defect before a candidate can be disqualified from the elections. Further, individual voters

*Nelson/Udhwani v. Caroline Fawkes, et. al.*
Emergency motion for temporary restraining order and preliminary injunction and memorandum of law in support of motion.

16

have nominated their candidates, Senator Nelson and Mr. Udhwani, in accordance with 18 V.I.C. § 381 – the process for selecting candidates outside of – and free of influence from – the established political parties in the Virgin Islands. As in the case of *Anderson v. Celebrezze, supra, where Justice Harlan* wrote that it is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech, those basic constitutional rights must be protected and any decision or interpretation of state statutes that unreasonably burdens these rights must be deemed unconstitutional.

### b. <u>FACTOR 2 – IRREPARABLE HARM</u>

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Under *Elrod*, harm that is threatened and occurring at the time of a motion for equitable relief "is sufficient to show irreparable harm because the timeliness of speech is often critical." *Abu-Jamal v. Price*, 154 F.3d 128, 136 (3d Cir. 1998). "It is purposeful unconstitutional [government] suppression of speech [which] constitutes irreparable harm for preliminary injunction purposes." *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989).

Here, the Supervisor of Elections, acting under color of law, seeks to deny Senator Nelson and Udhwani the right to associate with each other to access the ballot and the opportunity to reach the audience that is receptive to their message on the flawed bases of voter ineligibility and denial of due process. Her actions will keep them off of the ballot, which

will further impair their ability to spread their political message and offer the voters another choice. *In Jones v. McGuffage*, 921 F.Supp.2d 888, 901 (N.D.Ill. 2013) the court noted that it was "self-evident" that an otherwise qualified candidate would suffer irreparable harm if wrongfully deprived of the opportunity to appear on an election ballot; so would the citizens who would have voted for him and the members or prospective members of the party, if any, who supports the candidate. In fact, it was so "self-evident" that the government did not even contest the issue of irreparable injury. *Id.* Irreparable injury exists even when the issue is not whether the candidate's name will be on the ballot; but instead is "only" whether or not the candidate is entitled to be listed as a candidate for the same office under two different political organizations (where the government intends to only list the candidate in association with one of the two organizations). *See Credico v. New York State Bd. of Elections*, 751 F.Supp.2d 417, 420 (E.D.N.Y. 2010). This is also quintessential "irreparable harm," in that money damages would be futile as a form of redress, and belated equitable relief would be similarly ineffectual. E.g., *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008); *Barrow v. Graham,* 124 F. Supp. 2d 714, 716 (D.D.C. 2000) ("The Court ... finds that [the public employee- plaintiff] will suffer imminent and irreparable harm if the Court does not grant his motion for a TRO. He will lose his job today without the benefit of any due process protections whatsoever."). The balance of harms therefore militates in favor of *pendente lite* equitable relief.

## FACTOR 3 - CONSIDERATION OF THE HARM TO DEFENDANT

If a plaintiff shows a substantial likelihood that a challenged decision based on an

*Nelson/Udhwani v. Caroline Fawkes, et. al.*
Emergency motion for temporary restraining order and preliminary injunction and memorandum of law in support of motion.

18

incorrect interpretation of law infringes upon constitutional rights, "no substantial harm to others can be said to inhere in its enjoinment." *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001). The Defendants will not suffer any harm by the inclusion of Senator Nelson and Mr. Udhwani on the ballot. There is no issue of voter confusion – particularly since 18 V.I.C. § 411(d) and the Revised Organic Act mandate that Senator Nelson and Mr. Udhwani are listed jointly as independent candidates.

There is no identifiable harm that can occur even if Mr. Udhwani was deemed unqualified for failing to vote in two general elections because he re-registered the very same day he was told his registration had been canceled and the office of elections provided him a new voter registration card. There is no identifiable harm that can occur even if Mr. Udhwani was provided due process and had the chance to have his supporters re-affix their signatures to his nomination papers. In fact, that would be a benefit to a stable and fair and elections process, particularly since the general election is in the distant future of almost six months.

**c.  FACTOR 4: PUBLIC POLICY- GRANTING THE INJUNCTIVE RELIEF WILL BE IN THE PUBLIC INTEREST.**

The public interest supports granting an injunction. Due process alone militates overwhelmingly in favor of a temporary restraining order. The principle of due process articulated by the election statutes codified in Title 18 of the Virgin Islands Code is fundamental to fairness in the election system and democratic government. The First and

Fourteenth Amendments to the United States Constitution guarantee due process and fairness which embrace freedom of speech, expression, and the right to vote. The people decide the fate of their candidates for elected office once the candidate has demonstrated his or her eligibility to run for office, which in this case is undisputed, but for the Supervisor's position that, somewhere along the road, Mr. Udhwani's registration had been canceled.

Furthermore, "[t]here is no public interest in . . . excluding qualified candidates." Jones, 921 F.Supp.2d at 902. Likewise, the voters will not be burdened by the inclusion of two additional candidates on the ballot. *Id.* Further, "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir.1994); cf. Cunningham v. City of McKeesport, 807 F.2d 49, 52 (3d Cir. 1986) (vindication of Fourth Amendment right may well have served a public interest). This factor bears in favor of granting an injunction.

## 5. <u>CONCLUSION</u>

Plaintiffs have established a substantial likelihood of success on the merits. The irreparable injury it will suffer if a restraining order is not granted is manifest. The public interest strongly supports including the Plaintiffs on the ballot and there is no burden on the Defendants. Plaintiffs respectfully submit that they are entitled to the following relief at this time:

1. A temporary restraining order preventing Defendant Fawkes from disqualifying them form the 2018 general election.
2. A preliminary injunction enjoining Defendant Fawkes from disqualifying them from

*Nelson/Udhwani v. Caroline Fawkes, et. al.*
Emergency motion for temporary restraining order and preliminary injunction and memorandum of law in support of motion.

20

the 2018 general election and requiring her to place them on the ballot.

3. A proposed temporary restraining order is attached.

**DATED:** June 11, 2018

RESPECTFULLY SUBMITTED
By: Law Office of Trudy Fenster, P.C.,
*Attorney for the Plaintiff*


/s/ Trudy Fenster, Esquire
Trudy Fenster, Esq.
V.I. Bar No. 1031
2157 King Cross Street, STE 2
Christiansted, VI 00820
Telephone: (340) 244-4689
Email: trudy@injurylawvi.com


## CERTIFICATE OF NOTICE

**THIS IS TO CERTIFY** that on June 11, 2018, I gave notice to the Defendants by emailing a copy of this Verified Complaint and the Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum of Law in Support of the Motion to the following:

Caroline F. Fawkes:
caroline.fawkes@vi.gov.
Board of Elections
Terrell.alexandre@boel.vi.gov
Office of the Governor: Emile Henderson
III, Esq., Chief Legal Counsel:

emile.henderson@go.vi.gov
Attorney General of the Virgin Islands:
Claude Walker, Esq.,
claude.walker@doj.gov.vi


BY: ___s/ Trudy Fenster_____(tf)

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| POSITIVE T. A. NELSON, GARY UDHWANI and BRENDA CHARLES <br><br> Plaintiffs, <br><br> v. <br><br> CAROLINE FAWKES IN HER OFFICIAL CAPACITY AS THE SUPERVISOR OF ELECTIONS FOR THE VIRGIN ISLANDS and THE VIRGIN ISLANDS TERRITORIAL BOARD OF ELECTIONS <br><br> Defendants. | 1:18-CV- <br><br><br> **ACTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND DECLARATORY RELIEF** |

## <u>ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER</u>

Before the Court is the Plaintiffs' motion for a temporary restraining order which seeks an order temporarily enjoining the Supervisor of Elections, Caroline F. Fawkes, from disqualifying Positive T.A. Nelson and Gary Udhwani from competing for election to the Office of Governor of the Virgin Islands and Office of Lieutenant Governor of the Virgin Islands. Plaintiffs have certified that the notice of their complaint and the motion for temporary restraining order were served upon all defendants.

Plaintiffs assert that an immediate restraining order is required because Defendant Fawkes has indicated that in accordance with 18 V.I.C. § 411, she will disqualify Positive T.A. Nelson and Gary Udhwani.

Plaintiffs have met the procedural requirements for the issuance of a Temporary Restraining Order with notice as provided in Fed. R. Civ. P. 65. Their complaint is verified and notice has been given to all defendants.

*Nelson/Udhwani v. Caroline Fawkes, et. al.*
Emergency motion for temporary restraining order and preliminary injunction and memorandum of law in support of motion.

22

Plaintiffs have also met the substantive requirements for the issuance of a temporary restraining order. They have shown a likelihood of success on the merits as it appears likely that they will establish that their First and Fourteenth Amendment rights have been infringed upon and will continue to be infringed upon through either a misinterpretation of Virgin Islands law that Fawkes cannot reconsider an erroneous decision or an unconstitutional application of the law by failing to provide due process of law in both instances of misapplication. They have shown that they will suffer irreparable harm in that there is an immediate threat of a denial of their constitutional rights which will occur if Defendant Fawkes is not restrained from taking action. They have shown that any harm to Defendants or the public will be minimal, at best, and certainly there will be no harm from the issuance of a temporary restraining order that will expire in 14 days and unless Plaintiffs meet their burden of showing that a preliminary injunction should issue following a hearing on same. And they have shown that the public interest in having maximum participation in elections favors granting them temporary relief.

For the foregoing reasons it is Ordered that:

(1)     Defendant Fawkes is temporarily enjoined from disqualifying Plaintiffs Positive T.A. Nelson and Gary Udhwani from their candidacies for governor and   lieutenant governor;

(2)     If Defendant Fawkes has already disqualified Positive T.A. Nelson and Gary Udhwani, she shall immediately rescind such action pending further   order of

*Nelson/Udhwani v. Caroline Fawkes, et. al.*
Emergency motion for temporary restraining order and preliminary injunction and memorandum of law in support of motion.

23

this Court;

(3)     The Court will hold a hearing on Plaintiffs motion for a preliminary

injunction on June __, 2018.

(4)     This temporary injunction shall remain in effect until the conclusion of such

hearing unless it is modified by further Order of this Court.

Dated: June ____, 2018

_____
United States District Judge