## IN THE DISTRICT COURT OF THE VIRGIN ISLAND
## DIVISION OF ST. CROIX

| | |
|---|---|
| POSITIVE T.A. NELSON, GARY UDHWANI and BRENDA CHARLES | ) ) |
| | )    1:18-CV-17 |
| Plaintiffs, | ) |
| | ) |
| v. | ) ACTION FOR TEMPORARY |
| | ) RESTRAINING ORDER, |
| CAROLINE FAWKES IN HER OFFICIAL | ) PRELIMINARY INJUNCTION, |
| CAPACITY AS THE SUPERVISOR OF | ) PERMANENT INJUNCTION, AND |
| ELECTIONS FOR THE VIRGIN ISLANDS | ) DECLARATORY RELIEF |
| TERRITORIAL BOARD OF ELECTIONS | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

### FAWKES' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDERS AND PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW

COMES NOW, Defendant, Caroline Fawkes ("Supervisor Fawkes"), in her official capacity as Supervisor of the Virgin Islands Board of Elections, by and through her undersigned counsel, and hereby opposes the Plaintiffs' Emergency Motion for Temporary Restraining Orders and Preliminary Injunction. Supervisor Fawkes respectfully requests that this Court deny the Plaintiffs' motion and state the following in support of its position:

### I.    RELEVANT BACKGROUND

In December 2017, Senator Positive T.A. Nelson ("Senator Nelson") announced his candidacy for the 2018 governor's election.[1]  Apparently, from the time he announced his candidacy, Senator Nelson appeared to have a difficult time securing a running mate. On, or about,

---

[1] *See*, Ernice Gilbert, *Senator Positive Nelson will run for Governor in 2018. 'I am willing to be your next Governor if you're tired of this one,' he said*, The Virgin Islands Consortium, December 18, 2017, available at: https://viconsortium.com/featured/senator-positive-nelson-will-run-for-governor-in-2018-i-am-willing-to-be-your-next-governor-if-youre-tired-of-this-one-he-said/.

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **2**

May 7, 2018, Senator Nelson indicated that he would be dropping out of the race stating, "I don't have somebody that I can tell you is my running mate." [2]  However, on the very next day, he praised God and declared that Gary Udhwani ("Udhwani") would serve as his running mate. (*See* **EXHIBIT 1**).

On May 8, 2018, at about 11:53 a.m., Mr. Udhwani picked up his nomination papers as well as a copy of the Candidate affidavit form for him to sign and submit. (Dkt. No. 1 at ¶ 35). Mr. Udhwani then left the Elections office with the intent to obtain signatures.  (*See* **EXHIBIT 2**). After 5:00 p.m., Senator Nelson returned to the Elections office to turn in the nomination papers by the 6:00 p.m. deadline.  (Dkt. No. ¶ 36).  At that time, after an investigation was made by the staff at the elections office, Senator Nelson was told that Mr. Udhwani was not in the system as a voter and needed to re-register to vote in order to be qualified.  (*See* **EXHIBIT 2,** Dkt. No. ¶ 37). Senator Nelson was also informed by the elections staff that since Senator Nelson was a resident of St. Croix, he could not sign the Affidavit of Circulator for the District of St. Thomas-St. John ("STT Circulator Affidavit"). (*See* **EXHIBIT 2**).  *See also,* 18 V.I.C. § 382(1).

Thereafter, Senator Nelson instructed Mr. Udhwani to sign the STT Circulator Affidavit, notarize it, and send it to the Elections office immediately. (***Id.***).  The STT Circulator Affidavit states, "[T]hat I circulated the Nomination Petition or Nomination Paper relative to the nomination of Gary Udhwani." (*See* **EXHIBIT 3**).  This form also states, "[T]hat the signers of the petition, signed with full knowledge of the contents of same." (***Id.***)   Mr. Udhwani also signed an Affidavit

---

[2] Ernice Gilbert, '*God made it happen,' Nelson says, as he announces last-minute running mate Gary Udhwani*, The Virgin Islands Consortium, May 8, 2018, available at: https://viconsortium.com/politics/god-made-it-happen-nelson-says-as-he-announces-last-minute-running-mate-gary-udhwani/.

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **3**

of Candidate on May 8, 2018, which only goes to the fact that as of that date, he was a registered member of the Independent Party. (*See* **EXHIBIT 4**).   It is worth noting at this point, that roughly 82 signatures were gathered prior to May 8th on the *Nomination of Independent Candidates or Candidates Nominated by Political Body* which listed both Senator Nelson and Mr. Udhwani as the two candidates. (*See* **EXHIBIT 5**). The nomination papers were officially received by the elections office at 5:54 p.m. (*See* **EXHIBIT 6**).

On May 21, 2018, Supervisor Fawkes sent Senator Nelson a Notice of Disqualification letter. (Dkt. No. 1, Exhibit 2).  This letter stated the reasons for both candidates' disqualification as:

1) VIC 18, Section 346[3] - Composition of Petition; Affidavit of Circular. Statement number (1) Clearly reads - "That the Affiant is a Qualified Elector of the Territory of the Virgin Islands, Election District of St. Thomas/St. John".

2) The Affidavit of Circulator Received For Mr. Gary Udhwani Was Dated May 8, 2018. The (*sic*) first person to sign the Nomination Paper Signed on April 11, 2018.

3) Mr. Udhwani registered to vote on May 8, 2018 At 5:30 P.M. therefore, he was not a Qualified Elector in April nor any dates prior to May 8th.

4) Most of the Signatures on your Lieutenant Governor Candidate Nomination Paper were prior To May 8th.

---

[3] Supervisor Fawkes inadvertently cited to 18 V.I.C. § 346 titled Composition of Petition; Affidavit of Circulator.  The more applicable section is § 382 titled Composition of **Paper**; Affidavit of Circulator (emphasis added).  However, Defendant contends that this is harmless error because the minimum requirements are practically the same, and both sections are exactly the same as it pertains to the affiant.  Namely, that the affiant must be a qualified elector of the territory of the Virgin Islands.  18 V.I.C. §§ 346(1) and 382(1).

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **4**

5) Mr. Udhwani Picked Up The Nomination Papers In The St. Thomas Election Office at (*sic*) May 8, 2018 at 11:53 a.m.

6) Based on the above (*sic*) mentioned reasons, the Nomination Papers submitted by Mr. Gary Udhwani is not valid.  Therefore, your Team is Disqualified from the 2018 Elections.

Notwithstanding the fact that Mr. Udhwani may have registered to vote in 1995[4], Mr. Udhwani was disqualified, in part, because he was not a registered voter for purposes of being a qualified elector - a fact that he disputes.  Following a denied request to reconsider, offered by Senator Nelson to Supervisor Fawkes, Plaintiffs hired counsel, filed an administrative appeal with the Virgin Islands Board of Elections, and after no response, this law suit ensued.

## II.    <u>JURISDICTION</u>

### A. <u>The District Court Lacks Subject Matter Jurisdiction or Should Abstain</u>

**(i)    Plaintiff's claim must be dismissed because it raises a matter of local law and raises no substantial federal question that would support federal jurisdiction.**

Despite Plaintiffs' attempt to label the issue before the Court as a federal constitutional issue or a violation of the Revised Organic Act, a close review of the allegations shows that it is a purely local matter involving exclusively the interpretation of local law passed by the Virgin Islands Legislature.

Plaintiffs' cause of action does not arise under federal law. "The most straightforward test of whether an action presents a federal question is to determine the law from which the cause of

---

[4] *See* DKt. No. 1, ¶ 5,

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **5**

action arises, federal or otherwise." *Club Comanche, Inc. v. Gov't of Virgin Islands*, 278 F.3d 250, 259 (3d Cir. 2002). Plaintiffs do not cite a specific provision of the Revised Organic Act as the source of their cause of action.

To determine whether a case arises under federal law, courts must look to the plaintiffs' well-pleaded complaint. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d. Cir. 2002). Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Club Comanche*, 278 F.3d at 259 (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)). The Revised Organic Act "must be an element, and an essential one, of the plaintiff['s cause of action." *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 (3d Cir. 2004), *as amended* (Dec. 23, 2004). In other words, it must be one of "the pleading requirements." *Club Comanche*, 278 F.3d at 259. The Revised Organic Act has nothing to say about the disqualification of potential candidates for the Office of Governor or the Lieutenant Governor.

Any federal question raised by the complaint would not be substantial. A claim does not raise a federal question where the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quotation omitted). Not meeting the minimum threshold for candidacy to a local government office does not implicate the ROA or federal law.

"[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharmaceutical Inc. v. Thompson*, 478 U.S.

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **6**

804, 813 (1986). And it is not enough that the court may have to interpret federal laws or regulations. Rather, "the vindication of a right under state law must turn on some construction of federal law" and federal law "must be in the forefront of the case and not collateral, peripheral, or remote." *Id.* at 808; *see also, Gunn v. Minton*, 133 S. Ct. 1059 (2013)(finding no federal jurisdiction to hear a state-based claim where the federal issue was not substantial); *Gardiner v. St. Croix Dist. Governing Bd. of Dirs.,* 859 F. Supp. 2d 728, 740 (D.V.I. 2012)(holding that because the federal-law issues "embedded" in the claim are not substantial, federal court lacks jurisdiction). The issue here rests on the interpretation of local law and any peripheral federal issue cannot satisfy the substantiality requirement for federal jurisdiction.

Except for general references and categorizations, Plaintiffs have not cited a single specific provision of the Revised Organic Act that has been violated. It is evident that the Plaintiffs' claims are a challenge to Supervisor Fawkes' action under the *local* statute, not the Constitution or the Revised Organic Act. It is the local courts that Congress vested with the authority to determine the interpretation of local law, not the District Court. In *Bryan v. Fawkes*, 61 V.I. 416, 440 (V.I. 2014), the Virgin Islands Supreme Court explained that the District Court lacked jurisdiction to issue an injunction based solely on its interpretation of local law. *Id.* (holding that the V.I. Supreme Court serves as the final arbiter of local law the "the Revised Organic Act has been interpreted to require the District Court to defer to [the V.I. Supreme court] as to issues of Virgin Islands law."); *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 978 (VI. 2011)(explaining that when the Legislature established the V.I. Supreme Court in 2004, "it reposed in [the V.I. Supreme] Court "the supreme judicial power of the Territory" which "includes the power to both interpret local law and modify the common law.").

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **7**

All that remains is a question of local law, and the District Court does not have jurisdiction over local matters.  As the Third Circuit has repeatedly recognized, the Virgin Islands legislature has "divested the District Court 'of original jurisdiction over purely local civil matters.'"  *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 359 (3d Cir. 2007)(citation omitted). Virgin Islands law provides that "the Superior Court shall have original jurisdiction in all civil actions regardless of the amount in controversy."  4 V.I.C. § 76.  This case thus properly belongs in the local courts, not the District Court.

### (ii)     Even if this Court has jurisdiction, abstention under *Pullman* is appropriate.

To the extent a federal question may lurk—which it does not—given that the Territorial law issue is substantial and has not yet been addressed by the Territorial courts, the Court should abstain under *Railroad Commission v. Pullman Co*., 312 U.S. 496 (1941).  *See O'Reilly v. Bd. of Elections*, 2014 WL 7365942, at *4 (D.V.I. Dec. 23, 2014) (abstaining under *Pullman*). "There are dual rationales behind *Pullman* abstention: (1) avoiding premature federal court constitutional adjudication, which could ultimately be displaced due to state court construction of the law, and (2) preventing avoidable interference with state policies."  *Skif Corp. v. Gov't of the V.I.*, 2010 U.S. Dist. LEXIS 36919, *15 (D.V.I. Apr. 13, 2010). A court may abstain from hearing a case under *Pullman* if the following  three "special circumstances" exist: "(1) There are uncertain issues of state law underlying the federal constitutional claims brought in federal court;  (2) The state law issues are amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims; and (3) A federal court's erroneous construction of state law would be disruptive of important state policies." *Phila. City Council v. Schweiker*, 40 Fed. App'x. 672, 675 (3d Cir. 2002). Provided all three circumstances are present,

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **8**

the District Court must then assess whether abstention is appropriate by balancing such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and the effect of delay on the litigants. *O'Reilly,* 2014 WL 7365942 at 11.  Should the Court find that there is jurisdiction, *Pullman* abstention is appropriate.

First, these statutory provisions have not been construed by either the Superior Court of the Virgin Islands or the Supreme Court of the Virgin Islands in similar instances. There is no case law that Defendant is aware of that will assist this Court in determining how the local courts would interpret the statutory provisions.

Second, the Superior or Supreme Court of the Virgin Islands' interpretation of these statutory provisions would certainly obviate the need to address any federal issues, to the extent that there are any. Undoubtedly, any erroneous interpretation of Territorial law by the District Court would disrupt important state policies, as the efficient administration of the courts is of paramount interest to the Government.

All three exceptional circumstances are present and justify abstention under *Pullman*.  With respect to the other discretionary factors, there is no question that the Superior Court and the Supreme Court of the Virgin Islands would have jurisdiction over this matter, the same emergency relief that Plaintiff petitioned for here can be sought in the local courts, and the impact of any delay from abstention will be minimal, if any at all.  Thus, to the extent it has jurisdiction at all, this Court should abstain under *Pullman*.

### III.   <u>STANDARD OF REVIEW</u>

Rule 65 of the Federal Rules of Civil Procedure authorizes this Court to issue both TRO's and preliminary injunctions.  Although each rule differs in terms of at which point in the

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **9**

proceedings it may be invoked, they each share the same factors for the Court's consideration in

determining whether relief sought should be granted or denied.  These four factors include:

> (1) the moving party must show a likelihood of success on the merits; (2)
> the moving party must produce evidence sufficient to convince the court
> that in the absence of the relief he will suffer irreparable injury; (3) that
> granting the relief will not result in greater harm to the non-moving party;
> and (4) that granting the relief will be in the public interest.

*V.I. Tree Boa v. Witt*, 918 F. Supp. 879 at *893, 1996 U.S. Dist. LEXIS 2847 at *32, 34 V.I. 199

(collecting cases).[5]

Injunctive relief is an "extraordinary and drastic remedy," *Mazurek v. Armstrong*, 520 U.S.

968, 972 (1997), which is granted sparingly when there is no alternative method under the law to

safeguard plaintiff's rights.  It is the plaintiff's burden by a preponderance of the evidence to show

that injunctive relief is the only measure which will protect the plaintiff's rights and interests in

the lawsuit. *Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 91 (3d Cir. 1992).

Furthermore, "[T]he purpose of a temporary restraining order is to preserve an existing

situation in status quo until the court has an opportunity to pass upon the merits of the demand for

a preliminary injunction." *Pan American World Airways, Inc. v. Flight Engineers' International*

*Asso.*, 306 F.2d 840 at *842, 1962 U.S. App. LEXIS 4401 at *5, 50 L.R.R.M. 2801, 45 Lab. Cas.

(CCH) P17,767, 6 Fed. R. Serv. 2d (Callaghan) 1183; *see also*, *Jews for Urban Justice v. Wilson*,

311 F. Supp. 1158, 1970 U.S. Dist. LEXIS 11995 (D.D.C. April 21, 1970).  "A motion for a TRO

---

[5] *Crouch v. Prior,* 905 F. Supp. 248, 255 (D.V.I. 1995) (citing *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931, 45 L. Ed. 2d 648, 95 S. Ct. 2561 (1985); *ECRI v. McGraw-Hill, Inc.,* 809 F.2d 223, 226 (3d Cir. 1987); *SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1254 (3d Cir. 1985); *Olmeda v. Schneider,* 889 F. Supp. 228, 231 (D.V.I. 1995)).

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **10**

should be denied if the injunction would fundamentally alter the status quo." *Heraeus Med. GMBH*

*v. Esschem, Inc.*, 2014 U.S. Dist. LEXIS 155658 at *8.

## IV.   DISCUSSION

As a preliminary matter, the TRO request would have this Court issue an order stating,

"Defendant Fawkes is temporarily enjoined from disqualifying Plaintiffs Positive T.A. Nelson and

Gary Udhwani from their candidacies for governor and lieutenant governor[.]"  As stated above,

the purpose of a TRO is to maintain the status quo.  Supervisor Fawkes has already disqualified

both candidates.  If the TRO is granted, it would do precisely what a TRO is not supposed to do—

upset the status quo.  In any event, the Plaintiffs' Motion for the TRO, preliminary injunction, and

permanent injunction should be denied for the following reasons:

**A.**   **The Plaintiffs Are Not Likely To Succeed on the Merits**

> 1.  Plaintiffs Were Given Proper Due Notice with Regards To Their Disqualification And
>     Under No Circumstance Could Plaintiffs Cure Any Defect

In their TRO and Complaint, Plaintiffs allege that they were not notified of any defect with

their nomination papers in accordance with 18 V.I.C. § 411(c).  However, this argument is

misplaced.  Section 411(c) addresses a defect with the nomination papers, not the disqualification

of the candidate.  Specifically, it states that "[w]hen a … nomination paper … is found to be

**defective** the candidate shall be notified immediately by special messenger with the reason or

reasons therefor.  If a new, valid petition, paper or certificate is not filed within three days thereafter

the candidate shall be disqualified for nomination or election." 18 V.I.C. § 411(c)(emphasis

added).  Supervisor Fawkes intentionally sent Senator Nelson a letter of disqualification pursuant

to § 411(b) which states, "[i]f the Supervisor determines that a candidate for election or nomination

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **11**

does not meet the qualifications established by law for the office, then *he shall disqualify* such candidate and delete the candidate's name from the ballot if the ballots have not been printed." 18 V.I.C. § 411(b)(emphasis added).  This provision does not state how soon after the nomination papers are submitted that she must make that determination.  However, in this case, the Supervisor sent Senator Nelson a disqualification letter on May 21, 2018.

In this matter, it would have been futile for Supervisor Fawkes to send Senator Nelson a notice of defect because that would imply that the "defect" could possibly be cured within the allotted three days as set forth in § 411(c).   Since the deadline to file the nomination papers was on May 8, 2018, and Plaintiffs did not have the requisite amount of valid signatures pursuant to § 381(b) due to Udhwani not being a qualified elector, Plaintiffs could not cure their nomination papers by obtaining valid signatures after May 8, 2018.   For the Court to expand this time-frame would go against the purpose of the statute which is to set strict deadlines for compliance.  Curing a defect can only occur with statutory deadlines.  . Accordingly, Supervisor Fawkes correctly sent Senator Nelson a notice of disqualification and not a notice of defect.

Plaintiffs further argue that 18 V.I.C. § 412 is the mechanism in which Supervisor Fawkes must challenge the defective nomination papers.   However, Plaintiffs conflate the issues, of candidate eligibility and nomination petition and paper deficiencies.  The Virgin Islands Supreme Court has recognized this distinction in analyzing the same argument posed in *Haynes v. Ottley*, 61 V.I. 547, 565 (V.I. 2014).

In *Haynes*, the Supreme Court analyzed the distinction between § 411(b) and § 412 as it pertains to the Supervisor of Elections making a challenge and stated the following:

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **12**

> Were the Superior Court correct to interpret section 412 as deeming a
> candidate's qualifications valid, as opposed to only the candidate's
> nomination petition or paper valid, it would render section 411(b) a nullity,
> in that the Supervisor of Elections would have no authority to continue to
> vet the candidate's qualifications at the conclusion of the five-day period
> despite having clear statutory authority to do so, at least up until the printing
> of the ballots. (citations omitted). Notably, the Superior Court, in a well-
> reasoned decision issued more than three decades ago, previously explained
> that section 411(b) authorized the Supervisor of Elections to continue to
> review a candidate's qualifications notwithstanding the "deemed to be
> valid" provisions of section 412. *Moorhead v. Gov't of the V.I.*, 18 V.I. 237,
> 243-44 (V.I. Super. Ct. 1982). Importantly, section 412 became effective on
> February 20, 1963, when the Legislature adopted Act No. 936, and has not
> been expressly amended since; in contrast, section 411(b) became law when
> the Legislature enacted Act No. 2253 and it was approved by the Governor
> on June 26, 1968. As such, to the extent any conflict exists between these
> two provisions, section 411(b), as the most recent statute governing the
> same subject matter, must control in the event of a conflict. *Simmonds v.
> People*, 59 V.I. 480, 501 (V.I. 2013)(collecting cases).

*Id.*, 61 V.I. 547, 565-566.

Accordingly, Supervisor Fawkes was not obligated to object to the nomination papers

pursuant to § 412. To the contrary, § 411(b) is a more appropriate and relevant statute for guidance.

2.  Mr. Udhwani Was Properly Removed From the Voter Registration Roll

Plaintiffs argue that Mr. Udhwani was not given any notice that his registration was

canceled pursuant to 18 V.I.C. §116 [6] and §110. Pursuant to 18 V.I.C. § 93, no elector so registered

shall be required to register again for any election or primary while he continues to reside at the

same address, unless his registration is cancelled by reason of his failure to vote at two consecutive

general elections as provided in section 116 of this title. 18 V.I.C. § 93.

---

[6] 18 V.I.C. § 116 was repealed on January 10, 2018. *See* **Exhibit 7** attached. However, there is nothing to indicate
that the repeal applies retroactively. In addition, Plaintiffs are citing and availing themselves of the section in support
of their due process claim.

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **13**

The repealed section 116, on which Plaintiff relies, states that before the board of elections cancels an elector's registration for failure to vote at two consecutive general elections, the board must have notified that elector "that the records of the board indicate that he has not voted at the last two general elections and that his registration will be cancelled at the expiration of 30 days from the date of mailing such notice unless he shall, within that period, file with the board … a written request for reinstatement of his resignation …". 18 V.I.C. §116.

In this case, Mr. Udhwani alleges that he registered to vote in 1995, but does not affirmatively state the last time he voted. .  On May 8th, the elections office did not have  Mr. Udhwani's name as being a registered voter.  If Mr. Udhwani did register to vote in 1995, but did not vote for two consecutive general elections, then his registration would have been canceled pursuant to the repealed §116.  The Elections Office does not have any record of the cancellation notice, however, given the passage of more than twenty (20) years, there should be a presumption in favor of the Elections System that notice was sent to Udhwani's last registered address. .  Under repealed § 117, there,furtherwould be no obligation for the Elections System to keep such records beyond the five year retention period.  18 V.I.C. § 117.[7]

Section 117 states that "[w]hen the registration of an elector is cancelled for any cause, the board of elections shall mark on the cards the word 'cancelled' and the date and cause of cancellation, … but each such card shall be ***kept for five years***, after which ***the board may destroy it***."  18 V.I.C. § 117 (emphasis added).  Accordingly, Plaintiffs  should not be afforded a due process violation claim onthe basis of repealed legislation unless he can rebut same .

---

[7] 18 V.I.C. § 117 was repealed on January 10, 2018.  See **Exhibit 7** attached.

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **14**

Plaintiffs rely on 18 V.I.C. §110, for the Defendant's lack of notice regarding Mr. Udhwani's voting status. This section states, in part, that "[a]t least once in each four years, the board shall conduct a check-up of each ***registered*** elector in the election district by any method deemed necessary." *Id*. § 110(a)(emphasis added). The key word is "registered". This is absolutely clear and unambiguous. This provision does not come close to obligating the board to vet the system for unregistered, unenrolled, or otherwise non-existent voters, and then send them notices that they are not on the roll due to lack of voting. This would be an absurd result. *Haynes*, 61 V.I. 547, 573 (V.I. 2014)(courts should not interpret statutes in ways that will lead to absurd or clearly unintended results); *see also, Gilbert*, 52 V.I. at 357 (citing *American Dredging Co. v. Local 25, Marine Division, Int'l Union of Operating Engineers*, 338 F.2d 837, 842-43 (3d Cir. 1964)).

3.    The Plaintiffs' Nominating Package Contains Misrepresentations

Another glaring reason why supervisor Fawkes disqualified the candidates is because their nominating package contains misrepresentations, and, perhaps, a falsified affidavit. The Government makes this assertion based on facts known generally. For example, Senator Nelson, as of May 7, 2018, did not have a running mate—he actually stated he was going to drop out of the race for this reason. Then, the following day, he praised God for bringing Mr. Udhwani to his side. On May 8, 2018, Candidate Udhwani signed an Affidavit of Circulator. This Circulator states: "That I circulated the Nomination Petition or Nomination Paper relative to the nomination of Gary Udhwani, for the position of Lt. Governor," and "That the signers of the petition, signed with full knowledge of the contents of same." Further, *The Nomination of Independent Candidates or Candidates Nominated by Political Body* ("Independent Form") form states, "That we nominate

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **15**

Positive T.A. Nelson/Gary Udhwani". The first signatures on the Independent Form are dated April 11, 2018. In fact, there are a significant number of signatures that were collected **prior** to May 8th—the date when Mr. Udhwani first became a candidate. How could Mr. Udhwani's name have appeared on the Independent Form prior to even when Senator Nelson knew he was going to be his running mate? Furthermore, how could Mr. Udhwani have circulated the Independent Form prior to his knowledge that he was Senator Nelson's choice for Lieutenant Governor? The facts seem to suggest that Mr. Udhwani's name was added **after** the majority of the signatures were received, and that Mr. Udhwani may have misrepresented his participation as a circular—thus, presenting a falsified affidavit.

Without drawing any final conclusions, the Government asserts that if any candidate's name was added after signatures were received, or if misrepresentations were made by Mr. Udhwani regarding him having been the circulator, this could pose significant problems and serve to disqualify each candidate. First, if Mr. Udhwani's name did not appear on the Independent Form during the period of circulation prior to May 8th—and was added subsequently—then those that signed prior to May 8th could have been disenfranchised and misled. For example, if an April 11 signer was an ardent supporter of Senator Nelson, it would make sense for them to sign the Independent Form, however, if that same individual had a strong dislike for Mr. Udhwani then this might have impacted their willingness to sign the Independent Form—either way, the signers have an absolute right to sign the Independent Form with the knowledge that that form will not have subsequent additions or changes to the names of candidates. Second, this may be problematic because if Mr. Udhwani placed his name on the Independent Form after these signatures were

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **16**

received, or signed an affidavit stating he was the circulator when, in fact, he did not, this may

represent a material entry made in contravention of law.[8]

Changes, misrepresentations, or falsified affidavits to any candidate's nomination package

may jeopardize the clarity and sanctity of the Virgin Islands election system, and there is ample

case law to support this proposition.  "The form of nominating petitions and their accompanying

affidavits are not mere technicalities, but are necessary measures to prevent fraud and to preserve

the integrity of the election process." *In re Nomination Petition of Farnese*, 609 Pa. 573 at *580,

17 A.3d 375, at *380, 2011 Pa. LEXIS 682 (citation omitted).  "The policy of liberally reading the

Election Code cannot be distorted to emasculate the requirements of providing legitimate sworn

affidavits," and, "[a]ny falsity in an affidavit casts doubt on the accuracy of the entire affidavit,

and, thus, the authenticity of the petition." *Id*. at *580-581 (citing, *Citizen's Com, to Recall Rizzo

v. Bd. of Elections*, et al., 470 Pa. 1, 367 A.2d 232, 241 (Pa. 1976)).

In, *In re Cianfrani,* 467 Pa. 491, 359 A.2d 383, 1976 Pa. LEXIS 630, Keith M. Cianfrani

filed a nominating petition to become a member of the ward executive committee of the

Democratic Party for the 55th Ward, 7th Division, in Philadelphia.  On February 16, 1976, Mr.

Cianfrani executed an affidavit stating that he was a "registered and enrolled member of the

designated party", however, he did not actually register until the following day. *Id*. at *493.  The

Court stated, "[t]he question, thus, was not whether Mr. Cianfrani was qualified to hold the office

---

[8] Whoever:. . .  inserts, or intentionally permits to be inserted, any name or material entry in any registration card, list, affidavit, petition, subpoena, certificate, report, or other record, authorized or required by this title to be made or prepared by boards of elections for any purpose mentioned in this title, except in accordance with this title. . . shall be fined not more than $500 or imprisoned not more than one year, or both. 18 V.I.C. § 853.

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **17**

at the time the petition was filed, but rather whether a petition can be valid if it is supported by a

false candidate's affidavit." *Id.* at *494.  The Court continued, stating:

> As a corollary it must necessarily follow that a false affidavit must be *at least* equated with the failure to execute the affidavit. Without inquiring into the intentions of the parties and assuming the absence of any wrongful intent, the fact remains that when the affidavit was taken the facts sworn to were not true.  Such a defect cannot be cured by subsequent conduct and the petition was therefore void and invalid.

*Id.* (emphasis in original).

Similarly, in *Fortas v. Dixon*, 122 Ill. App. 3d 697, 462 N.E.2d 615, 1984 Ill. App. LEXIS

1599, 78 Ill. Dec. 496, a citizen filed suit against a candidate's nominating petition alleging that

the person collecting the signatures for the petition was not the same individual who signed the

circulator's affidavit.  The Court ruled in the citizens favor because, after hearing testimony, it was

clear that the circulators were not the same individuals that signed the affidavit—thereby

perpetuating a fraud on the elections system. The Court stated:

> The sheets purportedly circulated by A. C. Kelly clearly evidenced a pattern of fraud, false swearing, and total disregard for the mandatory requirements of the Election Code. . . .We believe plaintiff had clearly sustained his burden of proving Kelly had not personally circulated sheets 95, 113, and 5 and that Kelly's oath to the contrary was false. The testimony and affidavits adduced at the hearing could lead to no other conclusion. Accordingly, all the signatures on these sheets should have been stricken by the electoral board since the sheets did not contain the notarized affidavit of the actual circulator. This would have resulted in the deletion of an additional 32 signatures from the candidate's nominating petition.
> Similarly, we believe the board erred in refusing to strike all the names on sheet 1. The unrebutted testimony of Oliver Gregory was that he had circulated this sheet, not the woman, Ardelia Jones that had signed the circulator's affidavit.

*Id.* at *700-701.

In our particular situation, it appears that Mr. Udhwani attested on May 8, 2018, that he

personally circulated all 14 pages containing signatures, including those that predate his

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **18**

nomination as Senator Nelson's running mate—this calls into question the legitimacy of all signatures collected as well as to his sworn affidavit.  Furthermore, it appears from the facts, that Mr. Udhwani's name was added to the Independent Form after all of the signatures were collected in April and leading up to May 8th.  If these allegations are true, then the Government would contend that all of the signatures collected as well as Mr. Udhwani's affidavit are void and cannot be cured.

### B.  Irreparable Harm

The Plaintiffs, in their Motion, make an impassioned argument that their First Amendment rights will be infringed because of Supervisor Fawkes' decision to disqualify both candidates.  The Plaintiffs, quoting *In Jones v. McGuffage*, 921 F. Supp.2d 888, 901 (N.D.Ill. 2013), states that "it was 'self-evident' that an otherwise qualified candidate would suffer irreparable harm if **wrongfully deprived** of the opportunity to appear on an election ballot" (Pls.' Mot. pg. 17)(emphasis added).  The key words are "wrongfully deprived".  In this case, Supervisor Fawkes **rightfully** denied the candidates a place on the ballot because they were not qualified at the time they filed their nomination papers and that said package had misstatements and untruths.  She denied their candidacy to help preserve the integrity of the election system.

In any event, the Plaintiffs cannot show that they will be irreparably harmed if the TRO is not granted because this Court will, in due time, hold a hearing on the merits and if it so determines that the Plaintiffs are entitled to relief then they will be placed on the ballots.

### C.   HARM TO THE DEFENDANTS

As the entities charged with enforcing the election laws and protecting the election process, the harm to Defendants will be palpable.  As discussed above, Defendants have a duty to ensure

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **19**

that the laws passed by the Legislature are carried out as the Legislature intended. Defendants also have an interest in ensuring the integrity of elections and the electoral process in  that voters are provided with accurate information regarding the candidates and that candidates comply with the laws that govern the nomination process.

### D.  <u>PUBLIC'S INTEREST</u>

The public's interest in this matter are not only identical to the harm that would be caused to the Defendants that is mentioned above, but they would also suffer if the assertions that the Government makes with regard to affidavits with misstatements of fact and altered nominating papers.  After all, the public has an absolute right to believe the elections in the territory will be conducted fairly and honestly.  If the Government's assertions are true, and the candidates are allowed to proceed in this election cycle, this would serve to cast doubt on the legitimacy of the elections process.  Additionally, it would serve as a signal to future would-be candidates that they do not need to comply with the law and that sworn statements are merely formalities that carry no weight.  What message would be sent and understood by the community, at large, if they believed that those seeking public office  did not have to abide by the same standardsestablished in Virgin Islands law?  For this reason, until such time as a hearing can be held and testimony can be heard on these matters, it would be in the Defendants' as well as the public's best interest to maintain the status quo by denying the TRO.

### <u>CONCLUSION</u>

Because Udhwani's Affidavit was false at the time of obtaining the requisite signatures, and there could have been no way to remedy such defect, it follows that Senator Nelson's nomination is also defective as the two are running as a team.  Candidates cannot be allowed to

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **20**

circumvent the nomination process with their last minute entries into the political fray. The laws should not be adjusted for the convenience of candidates, but should be applied evenly and consistently as the Legislature intended.  Furthermore, Supervisor Fawkes clearly gave adequate notice under the statute and the Elections System was not obligated to give further notice of Udhwani's status of being an unregistered voter.  Supervisor Fawkes did not violate the Plaintiffs' constitutional rights, but rather, the Plaintiffs did not correctly execute on the nomination papers, and did not file them in sufficient time to cure any potential procedural defects.  Defendant, therefore, requests that the Court dismiss Plaintiffs' constitutional claims, decline to exercise supplement jurisdiction over Plaintiffs' local claims, and deny the TRO.

WHEREFORE, for the foregoing reasons, the Defendants request that the Court Deny Plaintiffs' motion for injunctive relief and a temporary restraining order.

RESPECTFULLY SUBMITTED,

CLAUDE EARL WALKER, ESQ.
ATTORNEY GENERAL

DATE: June 14, 2018                    By:   /s/ *Erika M. Scott*
                                       Erika M. Scott, Esq. VI Bar No. 1132
                                       Assistant Attorney General
                                       6040 Castle Coakley
                                       Christiansted, VI 00820
                                       Tel: (340) 773-0295 ext. 236
                                       Email: erika.scott@vi.gov

*Nelson/Udhwani v. Caroline Fawkes, et. al., Civ. No. 18/17*
Government's Response to Plaintiffs' Emergency Motion for
Temporary Restraining Order and Preliminary Injunction
P a g e | **21**

## <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on <u>July 14, 2018</u>, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to:

Trudy Fenster, Esq.
Law Office of Trudy Fenster, P.C.
2157 King Cross St., Ste 2
Christiansted, VI 00820



                  /s/ Erika M. Scott