# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| POSITIVE T.A. NELSON, GARY UDHWANI, )<br>and BRENDA CHARLES, )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>CAROLINE FAWKES IN HER OFFICIAL )<br>CAPACITY AS THE SUPERVISOR OF )<br>ELECTIONS FOR THE VIRGIN ISLANDS )<br>and THE VIRGIN ISLANDS TERRITORIAL )<br>BOARD OF ELECTIONS, )<br>)<br>**Defendants.** )<br>_____) | Civil Action No. 2018-0017 |

**Attorneys:**
**Trudy Fenster, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiffs*

**Erika Marie Scott, Esq.,**
St. Croix, U.S.V.I.
    *For Defendants*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

    This Matter comes before the Court on Plaintiffs' "Emergency Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum of Law in Support of Motion," filed on June 11, 2018 (Dkt. No. 2); Defendant's Opposition thereto, filed on June 14, 2018 (Dkt. No. 9); and Plaintiff's Reply, filed on June 15, 2018 (Dkt. No. 12). While the Court finds that it has jurisdiction over the instant matter, it will exercise its discretion under the *Pullman* abstention doctrine to abstain from adjudicating any issues of local laws asserted in Plaintiffs' Complaint,

filed on June 11, 2018 (Dkt. No. 1).[1] The Court will retain jurisdiction over the federal claims to the extent that adjudication of those claims by this Court is necessary, consistent with considerations of judicial economy.

## I. BACKGROUND[2]

Plaintiffs Positive T.A. Nelson ("Nelson") and Gary Udhwani ("Udhwani") seek to run as Independent candidates on a joint ticket for Governor and Lieutenant Governor of the Virgin Islands, respectively, in the November 6, 2018 general election. (Dkt. No. 5 ¶¶ 1-8). Plaintiff Brenda Charles ("Charles") is a citizen and resident of St. Croix, Virgin Islands, and is a registered voter in the territory as a member of the Democratic Party. (Dkt. No. 5 ¶¶ 9-10).

Nelson announced Udhwani as his candidate for Lieutenant Governor on May 8, 2018—the deadline for nomination papers to be submitted to the Office of the Supervisor of Elections ("Elections Office"). (Dkt. No. 9 at Ex. 1). On the same date, at about 11:53 a.m., Udhwani went to the Elections Office and picked up nomination papers and an Affidavit of Candidate form. (Dkt. No. 5 ¶ 35). Later that afternoon—before the 6:00 p.m. deadline for nomination papers to be submitted—Nelson went to the Elections Office to file his nomination papers and his Circulator Affidavit. (Dkt. No. 5 ¶ 36). At that time, Nelson was told that Udhwani could not be found in the elections system as a registered voter and, as a result, Udhwani was required to re-register in order to be a qualified candidate. (Dkt. No. 5 ¶ 37).

---

[1] Due to an error in the manner in which the Complaint was initially filed on June 11, 2018, the Complaint was refiled on June 12, 2018. The operative Complaint in this matter is thus found at Dkt. No. 5 and not at Dkt. No. 1. See Order entered on June 22, 2018. (Dkt. No. 14).

[2] The background here is taken from Plaintiffs' Complaint and accompanying exhibits, and exhibits attached to Defendants' Opposition to the TRO Motion.

Udhwani complied with this directive, and was provided a voter registration card as evidence of his reinstatement. (Dkt. No. 5 ¶ 38). Udhwani also signed and submitted the St. Thomas Circulator Affidavit form, which stated, *inter alia*: "the signers of the petition, signed with full knowledge of the contents of same." (Dkt. No. 5 at Ex. 1). Plaintiffs' nomination papers also included a form titled the "Nomination of Independent Candidates or Candidates Nominated by Political Body," which listed voters who nominated Plaintiffs as gubernatorial candidates. *Id*. Nelson and Udhwani's nominating papers were timely submitted to the Elections Office by the 6:00 p.m. deadline without further issues. (Dkt. No. 5 ¶ 39).

On May 21, 2018, after hearing rumors that his candidacy may be in peril, Nelson returned to the Elections Office. (Dkt. No. 5 ¶ 41). He was given a document dated May 21, 2018, titled "Notice to the Candidate," ("Notice"), and signed by Defendant Caroline Fawkes, Supervisor of Elections for the Virgin Islands ("Fawkes"). (Dkt. No. 5 ¶ 41-42; Dkt. No. 5 at Ex. 2). The Notice contained a section titled "Notice of Disqualification," which stated that, pursuant to 18 V.I.C. § 411(b), Fawkes disqualified the Nelson/Udhwani team for the 2018 election because their nomination papers were invalid. (Dkt. No. 5 at Ex. 2). Fawkes explained that most of the signatures nominating Udhwani for Lieutenant Government were void because the majority of them were signed *prior* to May 8, 2018, when Udhwani's registration was reinstated and he became a qualified voter. *Id*.

On May 22, 2018, Nelson wrote D Fawkes requesting "an opportunity to correct any defects or deficiencies on our nomination petitions as allowed in [18 V.I.C. § 411(c)]." (Dkt. No. 5 at Ex. 3). On May 25, 2018, Fawkes informed Nelson that, pursuant to § 412, any recourse would be through the Board of Elections ("the Board") or the legal system. *Id*. Plaintiffs appealed Fawkes' decision to disqualify them to the Board. (Dkt. No. 5 ¶ 55). The Board has not responded

to Plaintiffs' appeal. (Dkt. No. 5 ¶ 56). On June 5, 2018, Fawkes published the list of candidates certified for the 2018 election, and Plaintiffs' names were not included. (Dkt. No. 5 ¶ 57).

By Complaint, Nelson, Udhwani, and Charles initiated this action against Defendants Fawkes, in her official capacity as the Supervisor of Elections for the Virgin Islands, and the Virgin Islands Territorial Board of Elections (collectively, "Defendants"). Plaintiffs argue that Defendants' actions in depriving Udhwani of his right to notice and due process as it pertained to the cancellation of his voter registration, and in disqualifying him and Nelson from the 2018 general election without due process, violated their rights under the First, Fourteenth, and Fifteenth Amendments, made applicable to the Virgin Islands by the Revised Organic Act, 48 U.S.C. § 1561. (Dkt. No. 5 ¶ 61-64). Specifically, Plaintiffs assert that Defendants' actions deny Nelson and Udhwani's "right to associate with the candidate of their choice and to due process and fairness in the election process." (Dkt. No. 5 ¶ 61-62). Plaintiffs further claim that Defendants' actions deprive Charles of her right to vote for the candidates of her choice. *Id.*; (Dkt. No. 2 at 14).

In their Complaint, Plaintiffs request a temporary restraining order and a preliminary and permanent injunction preventing Defendants from disqualifying them as candidates for Governor and Lieutenant Governor in the November 6, 2018 general election. *Id.* ¶ A. Plaintiffs also request relief declaring that: (1) the requirements of 18 U.S.C. § 381 have been met for Plaintiffs' placement on the ballot, *id.* at ¶ B; (2) the Board's failure to provide notice to Udhwani of the possible cancellation of his registration and its failure to give him 30 days to express his intent to be reinstated rendered any actions to disqualify him unconstitutional and invalid, because the purported cancellation had no effect on Udhwani's registration status as a qualified elector on May 8, 2018, *id.* ¶ C; and (3) in the event of defective nomination papers, Plaintiffs were entitled to an

4

opportunity to cure under 18 V.I.C. § 411(c), and Defendants' failure to provide this process rendered their decision to disqualify Plaintiffs from the general election invalid. *Id*. ¶¶ D and E.

Together with their Complaint, Plaintiffs filed a TRO Motion which challenged their disqualification and sought an order requiring Fawkes to place them on the ballot for the November 6, 2018 general election. (Dkt. No. 2 at 1). In response to this Court's Order (Dkt. No. 4), Defendants filed their Opposition on June 14, 2018. (Dkt. No. 9). Plaintiffs filed a Reply on June 15, 2018. (Dkt. No. 12).

## II. ANALYSIS

### A. Subject Matter Jurisdiction

Defendants first challenge this Court's subject matter jurisdiction claiming that Plaintiffs have not stated any cause of action under federal law (or raised any substantial federal question), and have alleged instead only violations of local laws of the Virgin Islands. (Dkt. No. 9 at 4-7). Defendants characterize the action as "a purely local matter involving exclusively the interpretation of local law passed by the Virgin Islands Legislature." *Id*. at 4. The Court disagrees.

Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Thus, this Court has subject matter jurisdiction over this action because Plaintiffs allege that Defendants' interpretation and application of local election laws which resulted in Plaintiffs' disqualification and exclusion from the ballot for the November 6, 2018 general election violate the Revised Organic Act of 1954, 48 U.S.C. § 1561, and the United States Constitution—specifically the Plaintiffs' First, Fourteenth and Fifteenth Amendment rights. *See Thorstenn v. Barnard,* 883 F.2d 217, 218 (3d Cir.1989) ("[s]ince plaintiffs asserted a violation of a federal statute, *viz.,* the Organic Act, the claims if brought in a United States District Court would have been cognizable under 28 U.S.C. § 1331.

5

Subject matter jurisdiction in the district court for the Virgin Islands, therefore, existed pursuant to Section 22 of the Revised Organic Act of 1954[.]"); *Bell v. Pleasantville Hous. Auth.*, 443 Fed. Appx. 731, 735 (3d Cir. 2011) (opining that district court had federal question subject matter jurisdiction over action on ground that plaintiff's claim arose under the Constitution). Indeed, Plaintiffs' Complaint is clear in pleading allegations of constitutional violations, as further discussed in their TRO Motion and Reply. (Dkt. No. 5 at 10-11; Dkt. No. 2 at 12-16; and Dkt. No. 12 at 1-9). *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d. Cir 2002) (to determine whether a case arises under federal law, courts must look to the plaintiffs' well-pleaded complaint); *Club Comanche, Inc. v. Gov't of Virgin Islands*, 278 F.3d 250, 259 (3d Cir. 2002) ("federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.") (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)). Accordingly, this Court concludes that it has subject matter jurisdiction over this action, and Defendants' arguments to the contrary are rejected.[3]

**B. Abstention**

Defendants here argue that, even if the Court decides it has jurisdiction over this matter, it should abstain under the *Pullman* doctrine. (Dkt. No. 9 at 7-8). Plaintiffs oppose abstention. (Dkt.

---

[3] Defendants' reliance, *inter alia*, on *Bryan v. Fawkes*, 61 V.I. 416, 440 (V.I. 2014), for the proposition that this Court lacks jurisdiction over this matter is misplaced. As this Court found in *Payne v. Fawkes*, because its "rulings [in *Bryan*] were based on an analysis of *both* Section 6(b) of the [Revised Organic Act], 48 U.S.C. § 1572(b)—a federal statute—*and* local law, 18 V.I.C. § 411," 2014 WL 5548505, at *7 (D.V.I. Nov. 3, 2014), the Virgin Islands Supreme Court's conclusion that the District Court lacked jurisdiction over that matter was erroneous. This Court stated that there were "many factual and legal premises espoused by the Supreme Court [in *Bryan*] with which this Court respectfully disagrees . . . [P]rincipal among the issues is the Supreme Court's erroneous conclusion that this Court lacked jurisdiction over [the *Bryan*] matter." *Id*. at *4. The Virgin Islands Supreme Court's view of the District Court's jurisdiction, as expressed in *Bryan*, does not, therefore, guide this Court's decisions.

No. 12 at 9-11). The Court agrees with Defendants that abstention is the proper course of action here.

The general rule concerning federal jurisdiction is that federal courts are bound to adjudicate cases within their jurisdiction. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 358–59 (1989) (*abrogated in part on other grounds by Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 711 (1996)). The abstention doctrines are "extraordinary and narrow exception[s]" to the rule that federal courts must exercise the jurisdiction that has been conferred. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976) (citation omitted). Abstention is a "judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have the opportunity to decide the matters at issue." *Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Comm'n,* 791 F.2d 1111, 1114 (3d Cir. 1986) (internal citation and quotation marks omitted). The Supreme Court has "explained the power to dismiss or remand a case under the abstention doctrines in terms of the discretion federal courts have traditionally exercised in deciding whether to provide equitable or discretionary relief." *Quackenbush,* 517 U.S. at 730.

The Court finds that, under the particular circumstances of this case, *Pullman* abstention—first articulated by the Supreme Court in *R.R. Comm'n v. Pullman Co.,* 312 U.S. 496 (1941)—is appropriate here. This abstention doctrine "applies 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *Planned Parenthood of Central N.J. v. Farmer,* 220 F.3d 127, 149 (3d Cir. 2000) (quoting *Colorado River,* 424 U.S. at 814). In other words, *Pullman* abstention may be employed "where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication, or at

least materially change the nature of the problem.'" *Id.* (quoting *Bellotti v. Baird,* 428 U.S. 132, 147 (1976)). "The purpose of abstaining is twofold: (1) to avoid a premature constitutional adjudication which could ultimately be displaced by a state court adjudication of state law; and (2) to avoid 'needless friction with state policies.'" *Id.* (quoting *Pullman,* 312 U.S. at 500). The Third Circuit counsels, however, that *Pullman* abstention "should be rarely invoked." *Id.*

The Third Circuit has held that "three exceptional circumstances" are prerequisites to abstention under *Pullman*:

> First, there must be "uncertain issues of state law underlying the federal constitutional claims." *Presbytery of N.J. of the Orthodox Presbyterian Church v. Whitman,* 99 F.3d 101, 106 (3d Cir. 1996) . . . Second, the state law issues must be amenable to a state court interpretation which could "obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim." *Id.* Third, it must be that "an erroneous construction of state law by the federal court would disrupt important state policies." *Id.* If all three circumstances are present, the District Court is then required to determine, in the Court's discretion, "whether abstention is appropriate by weighing such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants." *Artway v. Attorney Gen. of N.J.,* 81 F.3d 1235, 1270 (3d Cir. 1996). *Planned Parenthood,* 220 F.3d at 149–50; *see also Hughes v. Lipscher,* 906 F.2d 961, 964 (3d Cir. 1990).

*Planned Parenthood*, 220 F.3d at 149. Consideration of these factors counsels in favor of invoking *Pullman* abstention under the circumstances here.

First, there are "uncertain issues of state law underlying the [Plaintiffs'] federal constitutional claims." *Id.* at 149. Plaintiffs' Complaint is replete with alleged violations of local election laws, grounded in statutory provisions—including 18 V.I.C. §§ 116, 346, 381, 411 and 412—for which there is a dearth of cases, or none at all, in which the local courts construe the statutory provisions in the specific contexts in which the challenges are presented in the Complaint. (Dkt. No. 2 at 1-5; Dkt. No. 12 at 1, 3). The paucity—or absence—of cases interpreting these provisions, and how they interact with each other, does not allow this Court to "know how the

8

courts of [the Virgin Islands] would interpret" these statutes in this context to resolve the litany of local election law issues underpinning the Plaintiffs' federal constitutional claims. *Presbytery of N.J.,* 99 F.3d at 107.

For example, 48 U.S.C.A. § 1591—a federal statute—mandates that to be eligible for Governor and Lieutenant Governor in the Virgin Islands, a candidate must "be *an eligible voter* [] for five consecutive years[.]" (emphasis added). An eligible voter is defined under Virgin Islands law as an individual who has registered to vote. 18 V.I.C. § 93. But prior to January 2018, a voter's registration could be canceled if the individual failed to vote in two consecutive general elections. 18 V.I.C. 116. Under the local law, prior to cancelling a voter's registration, the Board of Elections was required to notify a voter that his registration would be canceled after 30 days from the date of the notice unless the voter filed with the Board, either personally or by mail, a written request for reinstatement. *Id*.

Thus, in this case, an example of "uncertain issues of state law," *Planned Parenthood*, 220 F.3d at 149, arises in determining the effect of 18 V.I.C. § 116 on a candidate's electoral qualifications, and the collection of signatures on his behalf,[4] when his voter registration is purportedly cancelled, but he was not notified of that impending cancellation nor provided with the 30-day period to reinstate his registration, which Plaintiffs allege occurred here. In other words, there appears to be an open question as to whether a denial of the process allegedly due under §

---

[4] 18 V.I.C. § 381(b), in pertinent part, requires that nomination papers "for an office to be filled by the vote of the electors of the territory at large, [] shall be signed by at least 100 qualified electors of each of at least two election districts." Here, Udhwani's alleged failure to meet electoral qualifications due to his unregistered voter status prior to May 8, 2018, purportedly resulted in defective nomination papers because the signatures collected prior to May 8, 2018 pursuant to § 381(b) were voided by Fawkes pursuant to § 411(b). This raises another seemingly uncertain issue as to the interrelationship of disqualification under § 411(b) and defect—which triggers the cure period—under §411(c).

9

116, i.e., notice and a 30-day period to obtain reinstatement, would render the cancellation of a candidate's voter registration invalid, thus making him eligible to run for office and to have signatures collected on his behalf.

Another example of uncertainty arises in the context of determining the validity of signatures collected pursuant to 8 V.I.C. §§ 1381 and 382 prior to Udhwani being identified and announced as Nelson's running mate, as Defendants claim here. This raises the question whether those who signed nomination papers under such a scenario can be said to have signed "with full knowledge of the contents of the [nomination papers]," as required by § 382.

Issues of this nature can be resolved only with an interpretation of local election laws. However, the dearth of cases adjudicated in the local courts pertaining to the relevant statutes do not sufficiently address the intersection of these provisions in the context presented here.[5] Accordingly, the first factor favors abstention.

Second, if the Superior or Supreme Court of the Virgin Islands interprets the local election laws in such a manner as to find that some or all of Defendants' acts complained of by Plaintiffs run afoul of the law, such a finding could substantially narrow, if not obviate the need to address, Plaintiffs' federal constitutional claims. In addition, resolution of the local issues may change the nature of the constitutional issues presented. Thus, the second abstention requirement is satisfied. *See Planned Parenthood,* 220 F.3d at 149-150 (state court determination of local law may narrow or eliminate the need for federal constitutional adjudication, or change the posture of the constitutional issue); *see also Baggett v. Bullitt,* 377 U.S. 360, 376–77 (1964) (ruling that *Pullman*

---

[5] Plaintiffs cite *Moorhead v. Gov't of Virgin Islands*, 1982 WL 976137 (Terr. V.I. Nov. 12, 1982), *Bryan v. Fawkes*, 2014 WL 5409110 (V.I. Oct. 24, 2014), and *Payne v. Fawkes*, 2014 WL 4499559 (D.V.I. Sept. 12, 2014), but these cases do not alter this Court's conclusion.

abstention is triggered where "the unsettled issue of state law principally concern[s] the applicability of the challenged statute to a certain person or a defined course of conduct, whose resolution in a particular matter would eliminate the constitutional issue and terminate the litigation.").

The third requirement—that an erroneous construction of state law by the federal court would disrupt important state policies—is also met because the regulation and conduct of elections are matters of paramount interest to local government. *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 22 (2013) (observing that state's "undoubted interest" in regulation and conduct of elections "ought not to be deemed by this Court to be a subject of secondary importance."); *Valenti v. Mitchell,* 962 F.2d 288, 301 (3d Cir. 1992) ("The state's interest in a timely and orderly election is strong."). Given the elections context, together with the uncertain issues of local law presented, interpretations of the local law by the federal court that are subsequently deemed erroneous by the local court would disrupt important state policies. *Chez Sez III Corp. v. Twp. of Union,* 945 F.2d 628, 631, 633 (3d Cir. 1991).

Not only are the three prongs of the "exceptional circumstances" test present, but the *Pullman* factors that the Court must determine, in its discretion—such as the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants caused by the abstention—also counsel in favor of abstention. Third Circuit cases determining whether timely and adequate state court review is available have focused on "whether the state courts have jurisdiction over the plaintiffs' claims[.]" *Phila. City Council v. Schweiker,* 40 Fed. Appx. 672, 679 n.5 (3d Cir. 2002). The Superior Court has jurisdiction over this matter in view of the litany of local election laws that Plaintiffs allege were violated by Defendants. Moreover, contrary to Plaintiffs' argument (Dkt. No. 12 at 11), the existence of a pending case in

the local court is not required for a district court to abstain. *See e.g., Hughes*, 906 F.2d at 961, 966-968. *See also Ewe Distributors, Inc. v. Chu*, 629 F. Supp. 1527, 1533 (E.D.N.Y. 1986) ("[T]he existence of a pending state court action is not a prerequisite to *Pullman*-type abstention.") (citing *Connecticut State Federation of Teachers v. Board of Education,* 538 F.2d 471, 485 n. 10 (2d Cir. 1976)); *Freda v. Lavine,* 494 F.2d 107, 110 (2d Cir. 1974). Further, this litigation is not of long standing, and because Plaintiffs are free to file the case promptly in the Superior Court, the impact of any delay caused by the abstention should be negligible. Accordingly, these additional *Pullman* factors favor abstention.

### III. CONCLUSION

The Court finds that it has jurisdiction over this matter. However, pursuant to the abstention doctrine set forth in *Pullman,* the Court will abstain from adjudicating any issues of local law asserted in Plaintiffs' Complaint. The Court will retain jurisdiction over the federal claims to the extent that adjudication of those claims by this Court is necessary, consistent with considerations of judicial economy. An appropriate Order accompanies this Memorandum Opinion.

Date: June 25, 2018 _____/s/_____
WILMA A. LEWIS
Chief Judge